UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CINDY GAMRAT,

    Plaintiff,

v.                                                                                                                   Case No. 1:16-CV-1094

JOSHUA CLINE and DAVID HORR,                       HON. GORDON J. QUIST

    Defendants.
_____/

## OPINION

The Court heard oral argument on three interrelated motions on June 25, 2019. Defendant Joshua Cline filed his Motion to Dismiss the Amended Complaint on December 17, 2018. (ECF No. 131.) Cline was a legislative staffer to Cindy Gamrat[1] and Todd Courser, similar to previously dismissed Defendants Keith Allard and Benjamin Graham. Cline argues that he had less involvement in the alleged events than Allard and Graham and that when the Court examined the same claims, issues, and defenses in regard to Allard and Graham's motion to dismiss, it found that Gamrat failed to state a claim against Allard and Graham.

Gamrat responded to Cline's motion to dismiss on January 15, 2019. (ECF No. 143.) In that response, Gamrat asked the Court to consider new factual allegations in a yet-to-be-filed Second Amended Complaint to defeat Cline's motion to dismiss. One day earlier, Gamrat had filed a Motion for Relief from Judgment under Federal Rule of Civil Procedure 60(b), requesting that the Court grant relief from its March 15, 2018, Order, so that Gamrat could revive claims against dismissed Defendants Allard; Graham; Kevin Cotter, the former Speaker of the House;

---

[1] Cindy Gamrat now uses the name Cindy Bauer. For consistency, the Court will refer to Bauer as Gamrat–the name she used during the events in question.

Norm Saari, the former Chief of Staff to Cotter; and Brock Swartzle, former General Counsel for the Michigan House of Representatives. (ECF No. 138.) On January 22, 2019, Gamrat filed a Motion for Leave to File a Second Amended Complaint, reasserting claims against the aforementioned dismissed Defendants and adding factual allegations based on information gained through discovery in this case and discovery in Courser's state criminal case. (ECF No. 146.)

**I. BACKGROUND**

Gamrat and Courser were elected to the Michigan House of Representatives in 2014 and began serving in their capacities as representatives in early 2015. Gamrat and Courser had a joint staffing arrangement, whereby Allard, Graham, and Cline worked for both representatives, sharing time between their separate offices.

In February 2015, Joseph Gamrat, Cindy Gamrat's then husband, told Allard, Graham, and Cline that he believed Gamrat and Courser were having a sexual relationship, an affair to which Gamrat and Courser later admitted. Joseph Gamrat had frequent communications with Allard, Graham, and Cline throughout the relevant course of events.

On April 14, 2015, Cline quit his position as a legislative staffer. On May 19, 2015, Graham recorded a conversation that he had with Courser in Courser's office in which Courser asked Graham to send a "false flag" email to cover up the affair.[2] On July 6, 2015, Allard and Graham were fired from their positions with the House. On August 7, 2015, the *Detroit News* ran a story on Gamrat and Courser's affair, which included a portion of the May 19, 2015, recording that Graham had provided to the *Detroit News*.

---

[2] The email that Courser or someone on his behalf had authored contained a number of outlandish, untrue, and salacious allegations about Courser. Courser hoped the email would create such a stir that any real information that came out about this affair with Gamrat would be ignored as an exaggeration or seen as a smear campaign.

2

After the news story broke, Cotter directed Tim Bowlin, the Business Director for the House, to investigate allegations of the misuse of taxpayer resources to cover up the affair. On August 19, 2015, the House voted to form a bi-partisan Select Committee in connection with the investigation of Gamrat and Courser. On August 31, 2015, the House Business Office published its report based on Bowlin's investigation (HBO report). Hearings of the Select Committee began on September 8, 2015. The Committee voted to expel Gamrat on September 10, 2015. Very early the next morning, Gamrat was expelled by a vote of the full House.

From May to August 2015, Gamrat and Courser received anonymous extortion texts demanding that they resign from office. A Michigan State Police (MSP) investigation later revealed that Joseph Gamrat and Defendant David Horr were behind the extortion texts.

According to Gamrat, the new information that she has incorporated into the factual allegations of her Second Amended Complaint is as follows:

- Allard, Graham, and Cline were experienced and savvy political insiders—a "trifecta" in the words of Cline. There were certainly not the young and naïve political newbies that counsel for Allard and Graham attempted to portray in their motion to dismiss;
- Cotter and his staff had a contentious relationship with Gamrat;
- Saari had several meetings with Allard, Graham, and Cline, and told them in no uncertain terms that they work for the Speaker first;
- Cline saw it as his duty as a member of Cotter's staff first to give him and his staff information regarding Gamrat;
- Cline was providing information regarding Gamrat to several members of Cotter's staff;
- Cline received a severance package when he resigned;

3

- Saari and another member of Cotter's staff offered to help Cline find other employment during that time period;

- Cline had unauthorized access to Gamrat's email and personal accounts—some of which was provided by Allard and Graham—after he resigned from his position;

- The infamous recording made by Graham of Courser—and of Gamrat's private conversation with Courser—in Courser's office was edited before it was turned over to the House Business Office and used as part of the House's efforts to expel Gamrat;

- One member of Cotter's staff had told Cline to keep her posted on all fronts; and

- Cline saw the extortion texts and, while he was not the one sending the texts, he knew that information he was providing Joe Gamrat was getting directly to the extortionist.

(Pl.'s Mot. for Relief from J., ECF No. 140 at PageID.1941-42; *see also* Pl.'s Resp. to Cline's Mot. to Dismiss, ECF No. 143 at PageID.3471-72 *and* Pl.'s Mot. to Amend, ECF No. 147 at PageID.3519.) [3]

## II. DEFENDANT CLINE'S MOTION TO DISMISS

### A. *Procedural Issues*

<u>Motion to Dismiss vs. Motion for Judgment on the Pleadings</u>

Cline fashioned his motion to dismiss as a motion pursuant to Federal Rule of Civil Procedure 12(b)(6). Gamrat notes in her response that Cline filed an answer to the Amended Complaint on April 20, 2018, rendering a Rule 12(b)(6) motion inappropriate. However, as Gamrat concedes, Cline asserted "Failure to State a Claim" as an affirmative defense in his answer,

---

[3] The Court need only consider the proposed amendments that were identified by Gamrat in her briefing. *Begala v. PNC Bank, Ohio, Nat. Ass'n*, 214 F.3d 776, 784 (6th Cir. 2000). Gamrat states that, in addition to the new evidence she identified, she incorporates more than 1,500 pages of filings from Courser's related civil cases. However, the Court is not "obligated to wade through" more than a thousand pages of documents to find support for Gamrat's claims and declines to do so. *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989).

and Cline could have brought a motion based on the same defense under Rule 12(c). The Sixth Circuit has explained how a Rule 12(b)(6) defense is considered after an answer has been filed:

> Rule 12(h)(2) provides that the Rule 12(b)(6) defense of failure to state a claim upon which relief may be granted can be raised after an answer has been filed by motion for judgment on the pleadings pursuant to Rule 12(c). Where the Rule 12(b)(6) defense is raised by a Rule 12(c) motion for judgment on the pleadings, we must apply the standard for a Rule 12(b)(6) motion in reviewing the district court's decision.

*Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11 (6th Cir. 1987).

Although Cline cited Rule 12(b)(6) rather than Rule 12(c) as support for his motion, it appears the Court can simply convert the motion from a motion to dismiss to a motion for judgment on the pleadings. Nothing in Rule 12 prohibits such a conversion. Moreover, Rule 12(d) even specifically permits the Court to convert a motion under Rule 12(b)(6) or Rule 12(c) to a motion for summary judgment so long as the parties are "given a reasonable opportunity to present all the material that is pertinent to the motion." *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010) (quoting Fed. R. Civ. P. 12(d)). In this case, the parties assuredly have been given a reasonable opportunity to present all the material that is pertinent to the motion because motions under Rules 12(b)(6) and 12(c) are analyzed under the same standard. Thus, the Court will consider Cline's motion to dismiss as a motion for judgment on the pleadings.

Allegations in the Proposed Second Amended Complaint

In her response, Gamrat states that her claims against Cline should not be dismissed because the factual allegations in her proposed Second Amended Complaint suffice to defeat a motion to dismiss. Because the substance of the Second Amended Complaint is before the Court (ECF No. 147-1), the Court may consider the additional factual allegations in deciding whether dismissal with prejudice is appropriate. *See Begala v. PNC Bank, Ohio, Nat. Ass'n*, 214 F.3d 776, 784 (6th Cir. 2000) (stating that the Court would have considered the motion to dismiss in light of

5

proposed amendments to the complaint had the plaintiff filed a motion to amend and identified the proposed amendments prior to consideration of the motion to dismiss).

## *B. Legal Standard*

As noted above, the standard of review for a judgment on the pleadings under Rule 12(c) is the same as that for a motion to dismiss under Rule 12(b)(6). *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 389 (6th Cir. 2007). Under that standard, the Court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965). A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what . . . the claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1959 (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103 (1957)).

## *C. Analysis*

Even if the Court considers Cline's motion to dismiss in light of the added factual allegations in the proposed Second Amended Complaint, Gamrat has still failed to state a claim against Cline.

### Wiretapping/Eavesdropping

The majority of Gamrat's added factual allegations allude to Cline being more politically savvy than previously known; a strong relationship between Cline and Cotter's staff; and a

contentious relationship between Cotter and Gamrat. Those allegations are irrelevant to whether Cline violated federal or state laws concerning wiretapping and eavesdropping. The only allegations that need to be addressed in the context of the wiretapping and eavesdropping claims are (1) that Cline had unauthorized access to Gamrat's email and personal accounts after he resigned from his position; and (2) that the recording made by Graham of Courser in Courser's office was edited before it was turned over to the House Business Office.

In the proposed Second Amended Complaint, Gamrat alleges that Cline continued to be copied on emails and had unauthorized access to Gamrat's email and other accounts. (ECF No. 147-1 at PageID.3548.) In support of this allegation, Gamrat refers the Court to Exhibits 15 and 16 attached to the Second Amended Complaint. The Court may consider exhibits attached to the complaint when ruling on a motion to dismiss or a motion for judgment on the pleadings. *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008). Exhibit 15 is an email from Graham to Allard and Cline that includes, among other information, a username and password of Courser. (ECF No. 147-16.) Exhibit 16 is a text message from Cline to Allard requesting that Allard forward him an email from Courser. (ECF No. 147-17.) There are multiple problems with Gamrat's allegation. First, Exhibit 15 shows that Cline may have had access to *Courser's* account but does not support the allegation that Cline had access to *Gamrat's* account. Second, even if the Court accepts that Cline had Gamrat's username and password information, that is not enough to sustain a wiretapping or eavesdropping claim when there is no allegation that Cline ever accessed her accounts without permission. Finally, simply asking to have emails forwarded or being copied on emails is not a violation of wiretapping or eavesdropping statutes because there is no allegation that those emails were intercepted illegally. In fact, Gamrat's own allegation is that Cline asked Graham to forward an email that Graham had received from Courser.

7

Gamrat further alleges that the "infamous recording made by Graham of Courser" was edited before it was turned over to the House Business Office (HBO). (*See* ECF No. 147-1 at PageID.3547.) However, this allegation also fails to show wiretapping or eavesdropping. The Court has already determined that the recording that Graham made of his May 19, 2015, conversation with Courser did not violate any state or federal law "because there is no violation when the individual recording the conversation is also a participant." *Gamrat v. Allard*, 320 F. Supp. 3d 927, 945 (W.D. Mich. 2018). Whether the legally recorded tape was edited makes no difference in terms of wiretapping or eavesdropping laws. Moreover, Gamrat cites several pages of Cline's deposition testimony in support of this allegation. Those portions of deposition testimony state that the recording was edited to remove irrelevant parts of the conversation referring to Courser's wife. (*See* Cline Dep. pp. 147-50, 153-54, 165-66, ECF No. 147-2.) Therefore, the edited version of the recording was simply the relevant portion of the recording.

Civil Stalking

A civil stalking claim requires the plaintiff to prove "two or more acts of unconsented contact that actually cause emotional distress to the victim and would also cause a reasonable person such distress." *Gamrat*, 320 F. Supp. 3d at 946 (quoting *Nastal v. Henderson & Assocs. Investigations, Inc.*, 471 Mich. 712, 723, 691 N.W.2d 1, 7 (2005) (footnote omitted)). As Gamrat notes, the Court previously found that the extortion texts could satisfy the elements for a stalking claim but that Gamrat's allegations were not enough to tie Allard and Graham to the texts. *See id*. Gamrat argues that because Cline testified that he saw the extortion texts and knew that information he was providing Joseph Gamrat was getting to the extortionist, Cline is liable for civil stalking.

However, Gamrat's new factual allegation does not rise to the level of a civil stalking claim. Michigan law is clear that a stalking claim rests on a finding of unconsented contact. *See id*. Cline did not send the texts, nor did he direct anyone to send the texts, so there is no allegation of unconsented contact. Furthermore, the portions of Cline's deposition testimony that Gamrat cites do not support her allegation. Cline testified that no one ever told him about the extortion texts but that he saw the content of the extortion messages when Courser publicly posted the messages on Facebook. (Cline Dep. pp. 143-44, 193, 243-45, ECF No. 147-2 at PageID.3592, 3598, 3602.) Cline then stated that once he saw the content of the extortion messages, it appeared that information he was providing to Joseph Gamrat was reaching the extortionist. (*Id*.). Gamrat's new allegations miss the crucial link of unconsented contact between herself and Cline.

<u>Civil Conspiracy</u>

Under Michigan law, "a claim for civil conspiracy requires a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Gamrat*, 320 F. Supp. 3d at 941. To sustain a civil conspiracy claim, "the plaintiff must establish some underlying tortious conduct." *Urbain v. Beierling*, 301 Mich. App. 114, 132, 835 N.W.2d 455, 464 (2013). The Court has already determined that no Defendant violated the wiretapping or eavesdropping statutes. The only tortious conduct that is potentially alleged in this case is that Horr sent the extortion texts. However, while Gamrat alleges that Cline saw the texts and knew that information he was gathering reached the extortionists, the deposition testimony that Gamrat cites states that no one ever told Cline about the extortion texts and he only found out about the messages when Courser posted the messages on Facebook. That is not enough to show concerted action. Because the

added factual allegations from the proposed Second Amended Complaint do not suffice to state a claim for relief, the Court will grant Cline's motion.

### III. PLAINTIFF'S MOTIONS FOR RELIEF FROM JUDGMENT AND TO AMEND

Gamrat filed her Motion for Relief from Judgment Pursuant to Federal Rule of Civil Procedure 60(b), seeking relief from the Court's March 15, 2018, which granted several Defendants' motions to dismiss. (ECF No. 138.) She also filed a Motion for Leave to File a Second Amended Complaint that would, if the Court granted relief from its March 15, 2018, Order, allow her to reassert claims against the previously dismissed Defendants and add factual allegations against Cline and others. However, because Gamrat's motions are procedurally improper, the Court will deny both motions.

Rule 60(b) provides that "the court may relieve a party or its legal representative from a final judgment, order, or proceeding" in six enumerated situations. "[B]y its terms, Rule 60(b) applies only to final judgments." *Mallory v. Eyrich*, 922 F.2d 1273, 1277 (6th Cir. 1991). The dismissal of claims against some but not all defendants—as was the case with the March 15, 2018, Order—is not a final judgment. *Gavitt v. Born*, 835 F.3d 623, 638 (6th Cir. 2016).[4] Thus, Gamrat's motion for relief from judgment pursuant to Rule 60(b) is procedurally improper.

Although Gamrat cannot obtain relief from the Court's March 15, 2018, Order pursuant to Rule 60(b), the Court recognizes that it does have authority under Rule 54(b) to revise its Order. The Court is justified in revising its interlocutory orders when there is: (1) an intervening change in controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice. *Luna v. Bell*, 887 F.3d 290, 297 (6th Cir. 2018). Here, there has been no

---

[4] Gamrat conceded that the March 15, 2018, Order was not a final order when she voluntarily dismissed her appeal of the order in the Sixth Circuit, recognizing that the Sixth Circuit did not have jurisdiction over a non-final order. (*See* ECF No. 152-1.)

intervening change in controlling law, and Gamrat has not pointed to any clear error from the prior ruling, so the Court will focus on Gamrat's argument with respect to claimed new evidence. As stated above in the analysis of Gamrat's claims against Cline, the new allegations do not support claims for wiretapping/eavesdropping, civil stalking, or conspiracy against anyone other than potentially Defendant Horr. While Gamrat vaguely references evidence of "many audio clips and recordings," she has not offered anything more than conclusory allegations that the recordings were intercepted illegally. (ECF No. 147 at PageID.3520.) Thus, the new evidence is immaterial and does not justify a revision of this Court's previous order.

Because the March 15, 2018, Order dismissed Gamrat's claims against Defendants Allard, Graham, Cotter, Saari, and Swartzle with prejudice and Gamrat has not obtained relief from that Order, she cannot simply amend her complaint to revive claims against the previously dismissed Defendants through a motion to amend.

## IV. CONCLUSION

For the foregoing reasons, the Court will **grant** Cline's Motion for Judgment on the Pleadings (ECF No. 131), **deny** Gamrat's Motion for Relief from Judgment (ECF No. 138), and **deny** Gamrat's Motion for Leave to File a Second Amended Complaint (ECF No. 146). An appropriate order will enter.

Dated: July 11, 2019 /s/ Gordon J. Quist
GORDON J. QUIST
UNITED STATES DISTRICT JUDGE